## ROGAN v. WALKER et al.

1. DEED—EQUITABLE MORTGAGE—FORFEITURE.—R., who was a settler upon certain public lands, applied to W. to loan him the money to purchase the same. W. agreed to and did purchase the lands for him, taking the title in his own name. R. executed to W. a bond for double the minimum price of said lands, payable at a future day with interest at three and a-half per cent. per annum, and conditioned for the payment of all taxes, etc., and W., at the same time, executed to R. a deed of conveyance of the lands purporting to be in consideration of the said bond and $1, containing the usual covenants, followed by a condition in substance, that if R. should fail to comply with the conditions of the bond, or any of them, then the said conveyance and the estate created thereby should cease, determine and be of no effect, and that W. might re-enter and take possession and sell and convey the premises to any person or persons and retain the moneys paid thereon without recourse either to law or equity. R. failed to make payment as required by the bond, and his grantee brought suit to redeem the premises upon paying the sum due. *Held*, that by the deed the entire estate passed to R., subject to the lien of W. for the amount due on the bond, and that after breach of the condition contained in it, he or his grantee had an equity of redemption, which would be upheld and enforced upon payment of the amount due on the bond. The nature and effect of the transaction is more fully considered at a subsequent stage of the same case. 1 Wis. 527.

(2 *Chand.* 133.)

APPEAL from the Circuit Court of *Iowa* County.

The substance of the bill is as follows:

That *James Rogan*, went into possession, some time in the year 1836 or 1837, of two tracts of wild land about half a

mile apart, then belonging to the United States, which tracts are severally described as the northeast fractional quarter of section number five in township number eight of range fifteen east, in the county of Jefferson, and the northeast quarter of section number thirty-two of township number nine of range fifteen, in the county of Dodge, and that he remained in peaceful possession thereof as a settler until the time of the land sale ; that at or soon before the land sales at Milwaukee, in November, in the year 1838, *Martin O. Walker* appeared in the town of Milwaukee and gave out, and caused to be given out, among the settlers on the public lands, then about to be sold, that he had large sums of money, jointly belonging to himself and *Ellis Baker*, which he, *Walker*, proposed to advance and lend on behalf of himself and said *Baker* to purchasers of said lands on the security of said lands on the following terms and conditions : he, the said *Walker*, would purchase in his own name from the United States at the said land sale, at the minimum price of one dollar and a quarter per acre, the tract or tracts of land which the borrower of money from him, the said *Martin O. Walker*, desired to purchase, and take as a security for the loan the bond of such borrower to himself and the said *Ellis Baker*, in a penalty conditioned for the payment to the obligees therein, their executors, administrators or assigns, of double the said minimum price so to be paid to the United States, payable at a future day to be agreed upon, with interest thereon at the rate of one-half per centum per annum, and would thereupon convey such tract or tracts of land to such borrower by deed of conveyance, with covenants of warrantee against the acts of him, the said *Martin O. Walker*, only, with a condition or *proviso* annexed and forming a part of the deed, that if the grantee named in such deed should fail to comply with the conditions of such bond, then that such conveyance and the estate thereby created should cease, determine and be of no effect, and the said *Martin O. Walker*, or his legal

representatives should have the right to enter and take possession of the premises thereby conveyed, and to sell and convey the same to any other person or persons, and keep and retain all moneys paid thereon, without recourse in law or equity; that *Walker*, when he came to Milwaukee as aforesaid, brought with him printed forms, printed long previously to the land sale, for the use of *Walker* and *Baker*, and having their names printed therein, being bonds and deeds as before described, for the purpose of being used by *Walker* in any transactions which he might be able to effect with persons proposing to purchase lands at the land sale; that *James Rogan* went to said land sale to purchase the two tracts before mentioned, and that he, finding himself short of the necessary funds to purchase them, and learning the proposals of *Walker* before mentioned, applied to *Walker* for a loan of money sufficient to enable him, the said *Rogan*, to purchase the said two tracts; that *Walker* consented to loan it, upon the terms of his proposals, and to give *Rogan* credit thereon for the terms of four years, to all which said *Rogan* consented, and an agreement was accordingly made between them, on the terms of the proposals and givings out of *Walker*, before the sale of the two tracts or either of them; that in pursuance of the agreement between *Walker* and *Rogan*, the said *Rogan* did, on the 18th day of February, A. D. 1839, execute to *Walker* the bond of said *Rogan*, bearing date on that day, in the penalty of $1,659.14, to be paid to said *Walker* and *Ellis Baker*, their executors or assigns, and conditioned for the payment by *Rogan* to *Walker* and *Baker* of the sum of $829.58, on the 18th day of February, A. D. 1843, and annually, on the 18th day of February, the sum of $29.04 as interest, and for the payment of all taxes, etc., that might be imposed upon the premises that day conveyed by said *Walker* to said *Rogan*, and in all things to save him and them harmless; and that thereupon, and in pursuance of the agreement between *Walker* and *Rogan*, *Walker* did, on the said 18th day of February, make and execute, in due

form of law, his deed of conveyance, bearing date on that day, purporting that the said *Walker*, in consideration of the condition of a certain bond therein named and of one dollar in hand paid by the said *James Rogan*, did thereby grant, bargain, sell and confirm unto the said *James Rogan* and to his heirs and assigns, by apt and proper description, the said two tracts of land, hereinbefore described as containing and which did contain three hundred and thirty-one acres and eighty-three hundredths of an acre, together with the appurtenances, to have and to hold the said premises, with the appurtenances, unto the said *James Rogan* and to his heirs and assigns forever; and that the said *Walker*, for himself, his heirs, executors and administrators, did covenant to and with the said *James Rogan* and his heirs and assigns, the thereby bargained premises in the quiet and peaceable possession of the said *James Rogan*, his heirs or assigns, against all and every person or persons lawfully claiming or to claim the whole or any part thereof, by, through or under the said *Walker*, he would warrant and defend; conditioned and provided always, anything herein contained to the contrary notwithstanding, that if the said *James Rogan* should fail to comply with the conditions or any part thereof of a certain bond, bearing even date therewith and thereinafter contained and described, then that conveyance and the estate thereby created should cease, determine and be of no effect, and the said *Martin O. Walker* or his legal representatives should have the right to re-enter and take possession of the said premises, and sell and convey the same to any person or persons, and keep and retain all moneys paid thereon, without recourse either at law or equity, and purporting therein to contain and recite a copy of the said bond or obligation of the said *James Rogan* to the said *Martin O. Walker* and *Ellis Baker*, above mentioned and set forth.

The bill further charges, that on the 23d day of February, in the year last above mentioned, the said *Walker*, in pursuance of the agreement between him and *Rogan* abovemen-

tioned, purchased of the United States the two tracts of land hereinbefore mentioned; that *Walker* purchased the said tracts for the said *James Rogan*, and that the payment of the money by *Walker* to the United States for the said lands was made by him on account of *Rogan*, and was the true and only consideration of the bond of *Rogan* to *Walker* and *Baker*, and that on the 27th day of February, in the year last mentioned, *Walker* duly acknowledged and delivered to *Rogan* his said deed of conveyance; and the bill charges that thereby the said *James Rogan* became seized in fee simple of the two several tracts of land in his own right, subject to the right of *Walker* and *Baker*, as incumbrancers thereon, for all sums due or to become due on said bond of *Rogan* to them; that the whole of the transaction, of the executing and delivering of the bond to *Rogan*, and the conveyance of *Walker* and the purchase of the two tracts of land by *Walker*, were all part and parcel of the agreement between *Walker* and *Rogan*, previously had between them, and that the true intent and object of that agreement and those transactions was the loan of money from *Walker* and *Baker* to *Rogan*, and the securing thereof; and that *Rogan's* bond, and the condition or proviso of *Walker's* deed, were intended, by the parties thereto, to secure the payment of the loan and interest; and that *Walker* purchased the land for the sole purpose of securing the repayment of the loan made by him to *Rogan*, and without any intention of acquiring and holding the same or any part thereof for himself or for himself and *Baker;* and that the condition or proviso in *Walker's* deed operates in law as a mortgage on the premises conveyed, and that it was inserted in and made a part of *Walker's* deed for the sole purpose of defeating the rights of redemption of the two tracts of land by *Rogan*, in case he should fail to pay the sums mentioned in his bond, when the same should become respectively payable; that *James Rogan* remained in the quiet possession of the two tracts of land, from the time that he went into possession thereof until and at the

time of his said transactions with *Rogan* and *Walker*, and has ever since continually remained in such possession of the north east quarter of section number 32, town 9, range 13, and ever remained continually in such possession of the northeast fractional quarter of section number 5, town 8, range 15, until the conveyance thereof unto the complainant in this suit, when the complainant went into the possession, and has ever since remained in possession ; that from the time that *James Rogan* went into possession thereof, until the present time, the possession of the two tracts by *James Rogan* and by the complainant has been continued, uninterrupted and adverse to all the world ; that *Walker* and *Baker*, nor either of them, have ever had posseession of the said tracts or any part thereof ; that at the time of the transactions between *Walker* and *James Rogan*, the two tracts of land were almost wholly unimproved, and of equal value ; and that the tract still owned and held by *James Rogan* is an abundant security for one-half of the principal and interest mentioned in the bond, and now remaining unpaid ; that *James Rogan* has not paid any part of the principal, but has paid some part of the interest on his said bond ; that on the 20th day of January, 1842, *James Rogan* and his wife conveyed the northeast fractional quarter of section number 5, town 9, range 15, to John Masterton, by warranty deed, and that on the 30th day of July, 1844, Masterton and his wife conveyed the said tract by warranty deed to the complainant ; and that the deeds herein before mentioned, were all recorded in the counties wherein the said tracts of land were situated, soon after the dates thereof ; that sometime in the fall of the year 1847, *Walker* instituted an action of ejectment against the complainant, for the recovery of the possession of the tract last described, in the district court of the county of Jefferson, which has been removed to this court, and is now pending therein, in which action *Walker* claims title to the said tract of land by reason of the failure to pay the sum secured by his bond at the ma-

turity thereof, and by no other claim of title ; that by the said several conveyances, he is seized and possessed in fee simple absolute of the tract last described, subject only to the right of *Walker* and *Baker*, as mortgagees thereof, to secure the payment of all sums due them on foot of *James Rogan's* bond, equitably chargeable against the last described tract.

This bill prays that an account may be taken of the amount due on the bond of *Rogan*, and that he be decreed to pay the same, and in default of his paying it, that the complainant may be allowed to pay it or such part of it as to the court may seem sufficient to entitle complainant to redeem his tract, and that when complainant or *James Rogan* shall have paid such sum as may be decreed to *Walker* and *Baker*, that they may be decreed to satisfy and release the proviso or condition in the conveyance of *Walker*, and that the same may be decreed forever satisfied and discharged, and that *Walker* and *Baker* may be decreed to execute such other and further assurance and acquittance as to the court shall seem just.

To the complainant's bill the defendant *Walker* demurred generally, and it was overruled, and from the order overruling it he appealed.

*A. Hyatt Smith*, for the appellant, argued that this was a bill filed to redeem, charging that a conditional deed is a mortgage. The first question is, what is the instrument set forth in the bill of complaint, is it a mortgage, or a conditional deed ? Estates upon condition are divided into estates upon condition implied in law, and estates upon condition expressed in deed. 4 Kent, 120. Conditions in deed are expressly mentioned in the contract between the parties, and the object of them is either to avoid or defeat an estate ; as if a man (to use the case put by Littleton), enfeoffs another in fee, reserving to himself and his heirs a yearly rent, with an express condition annexed, that if the rent be unpaid, the feoffor and his heirs may enter and hold the lands free of the feoffment. So, if a grant be to A. in fee, with a proviso that

if he did not pay twenty pounds by such a day, the estate should be void. It is usual in the grant to reserve in express terms, to the grantor and his heirs, a right of entry for the breach of the condition, but the grantor may enter and take advantage of the breach by ejectment though there be no clause of entry. 4 Kent, 122 ; Co. Lit. 4 ; Lit. § 325.

If A. enfeoffs B. of certain land to have and to hold to the said B. and his heirs, upon condition that the said B. and his heirs do pay or cause to be paid to the aforesaid A. and his heirs yearly, such a rent, etc., in this case, without any more saying, the feoffor hath an estate upon condition. COKE says : " Here in this and the next two sections Littleton doth put few examples of words that make conditions in deed, and first the above condition. This is the most express and proper condition in deed. Co. Lit. 203 ; Lit. § 320 ; 2 Bacon Tit. Con. 200.

If A. grant land to B. to have and to hold to him and his heirs, *provided that, or so as, or under this condition*, that B. do pay to A. £10 at Easter next ; this is a good condition, and the estate is conditional without any more words. Shep. Touch. 235 ; Marg. 121 ; 3 Cow. 220. And this (a condition) is sometimes contained in a testament or will, and sometimes in a deed. And where it is in a deed it hath no proper place assigned, but it may be in any part of the deed ; howbeit for the most part it is placed next after the habendum, if any. Shep. Touch. 228 ; Marg. 117. And so, also, if the time of doing the thing be past as if any one make a feoffment to me on condition that if he pay me £10 such a day the feoffment shall be void, and if he doth not pay me at the day, but both die, and after by agreement between his heirs and me, he doth pay me the £10, and I receive and accept it, and thereupon I suffer him to enter and hold the land ; in this case the condition is not performed, but I may enter upon and oust him notwithstanding. Therefore, in cases of this sort, either a new conveyance, a release or a con-

firmation should be taken, according to the circumstances. Shep. Touch. 269, *marg.* 143. The first position, the conditional character of the deed being established, the question arises, are facts enough charged in the bill to change this character and turn it into a mortgage. It will be borne in mind that the bill contains no allegation of title to the lands described in the complainant or his grantor, but naked occupancy of two quarter sections of land belonging to the United States, which gave to the grantor of complainant no right, he being a mere trespasser on the public domain, and further, that the bill does not show such improvement as would entitle him to prove a pre-emption right to either of said quarter sections. See pre-emption act, approved May 29, 1830, and the act approved June 22, 1838.

Could the grantor of the complainant, then, by any agreement, create a mortgage on said lands?

This question can only be answered by an inquiry into the necessary ingredients which enter into and constitute a mortgage. A mortgage is the conveyance of an estate by way of pledge for the security of debt and to become void on payment of it. The legal ownership is vested in the creditor, but in equity the mortgagor remains the actual owner until he is debarred by his own default or by judicial decree. Kent, 134. Now it is called here a mortgage or *mortuum vadium*, both for the reasons here expressed by Littleton, as also to distinguish from that which is called *vivum vadium*. As if a man borrow a £100 of another and maketh an estate of lands unto him, until he hath received the said sum of the issues and the profits of the land, so as in this case neither money nor land dieth. A pawn of land or tenement or any thing immovable, laid or bound for money borrowed, to be the creditors for ever if the money be not paid at the day agreed on. Tomlins' Dic. Tit. Mortgage and authorities there cited. As soon as the agreement for an absolute sale is executed and the consideration paid, the ven-

dor is in equity a stranger to the estate, and any subsequent transactions between him and the purchaser cannot, it would seem, have the effect of divesting the ownership from the purchaser and reinvesting it in the original vendor. There is no greater privity of estate subsisting between them than between two indifferent persons, and no act has been done to shift the ownership back again. Then if the purchaser contract on the repayment of the purchase-money, with interest, to reconvey the estate, this can be of no more avail in equity, than if A. should contract to sell the estate to B. on payment of a sum of money with interest; if the purchase-money is not paid, A. may rescind his contract. Coote on Mort. 38; *Sabine v. Barrel*, 1 Vin. 268; *Cotrell v. Purchase*, Talbot, 60; *Endsworth v. Griffith*, 15 Vin. Ab. 468. If not a mortgage as between grantor and grantee as above, clearly not as between *James Rogan* or his grantee and defendant, because prior to the execution of the deed, *Rogan* was a stranger to the estate, the title being in the government, and defendant a purchaser of the government title. In the language of the above cases there was no privity of estate. If it shall be contended that the facts set up in the bill show that *Walker* bought the land in question in trust for *James Rogan*, and that *Rogan* could mortgage his equitable title, the obvious answer is, that the trust was fully executed when *Walker* conveyed the land to *Rogan* in pursuance of, and according to the terms of the agreement between them, and that all the agreements which created the trust were merged in the conditional deed.

*Finch & Lynde*, for the appellees.

1. Every person having any interest in the mortgaged land, by grant or operation of law, can bring a bill to redeem. 2 Story's Eq. 290, 291; Story's Eq. Pl. 170, 171; *Day v. Dunham*, 2 John Ch. 181. And the bill of complainant has all the proper parties. Story's Eq. Pl. 170, 171; 2 Greenlf. Cruise, 27, § 6; 2 ib. 139, note 1; 2 Story's Eq. 1023; 4

Kent's Com. 162–164.   2. The bill avers offer to pay ; this is sufficient, tender is unnecessary.   3 Hoff. Ch. Prac. 266 ; *Novosielski v. Wakefield,* 17 Ves. 417 ; *Perrine v. Dunn,* 4 John Ch. 140.   3. A deed made for lands, to be absolute on the payment of certain notes, but in default of payment to be void, is to be considered as a mortgage.   2 Greenlf. Cruise, 79 ; *Carr v. Holbrook,* 1 Miss. 240.   4. The reverse of the last proposition is also true ; a conveyance given as a mortgage, but to become a deed after a failure without equity of redemption, will be always held subject to the equity of redemption.   And the reasons of both propositions are the same.   *Johnson v. Gray,* 16 Serg. & R. 361 ; *Stover v. Stover,* 9 id. 434.   5. An absolute deed of lands accompanied by a stipulation, either in or out of the deed, that the estate shall be reconveyed on payment of money, is a mortgage.   *Erskine v. Townsend,* 2 Mass. 493 ; *Taylor v. Weld,* 5 id. 109 ; *Gray v. Ransom,* 8 id. 159 ; *Harman v. Phillips,* 12 id. 456 ; *Scott v. McFarland,* 13 id. 309 ; *Eaton v. Whiting,* 3 Pick. 181 ; *Hughes v. Emmons,* 9 Wheat. 489 ; 5 Cond. 648. And this even when there is no written defeasance.   *Lane v. Shearf,* 1 Wend. 433 ; *Watson v. County,* 14 ib. 63 ; *Smith v. Sackett,* 5 Gill. 534.   If the transaction be a security, whatever be the form, equity will hold it a mortgage.   *Flagg v. Mann,* 2 Sum. 487 ; *Parks v. Hale,* 2 Pick. 211.

And so even if unaccompanied by any personal collateral engagement for the money.   *Rice v. Rice,* 4 Pick. 349.   If it is doubtful whether the parties intended a conditional sale or a mortgage, courts of equity will regard it as a mortgage, such construction being the more just and equitable, tending to prevent oppression.   *Poindexter v. McCannon,* Dev. Eq. 575 ; *Manner v. Miller,* 5 Lit. 84 ; 2 J. J. Marsh, 471 ; *Edgerton v. Harper,* 3 id. 354 ; *Crane v. Bonnell,* 1 Green Ch. 354.   And in order to ascertain the intention of the parties, courts will look not only to the deeds and writings, but to all the circumstances of the contract, and for this purpose will receive parol

evidence. *Robertson v. Campbell*, 2 Call, 421 ; *King v. Newman*, 2 Munf. 40 ; *Thompson v. Davenport*, 1 Wash. 125. Once a mortgage, always a mortgage. 1 Powell on Mort. 127*a*, 116, 117, note 7. No agreement between the parties can take away the right of redemption in equity. Powell on Mort. 116, 117, note; 2 Story's Eq. 287 ; 4 Kent. 142–144.

HUBBELL, J. The circuit court for Iowa county overruled a general demurrer, filed by the defendant, *Walker*, to the complainant's bill. From this decision *Walker* appealed. The allegations in the bill are admitted. It sets forth that at, or soon before the land sale in Milwaukee, in 1838, *Martin O. Walker* appeared in the town of Milwaukee, and gave out, and caused to be given out, among the settlers on the public lands, that he had large sums of money, belonging to himself and *Ellis Baker*, which he, *Walker*, proposed to advance and lend, on behalf of himself and *Baker*, to purchasers of said lands on the security of the lands, on the following terms and conditions : He, the said *W.*, would purchase at the land sale, in his own name, at the minimum price of one dollar and a quarter per acre, the tract or tracts of land which the borrower of the money from him desired to purchase, and take as security for the loan, the bond of such borrower, to himself and *Baker*, in a penalty, conditioned for the payment of double the said minimum price, payable at a future day to be agreed upon, with interest thereon at three and one-half per cent. per annum ; and would, thereupon, convey such tracts of land to the borrower, by warranty deed, with a condition or proviso annexed, and forming part of the deed, that if the grantee should fail to comply with the condition of such bond, then such conveyance and the estate thereby created should cease, determine, and be of no effect ; and the said *Walker*, or his legal representatives, should have the right to enter and take possession of the premises and sell the same, and keep and

retain the moneys paid therefor, without recourse in law or equity.

The bill further states, that in 1836–37, *James Rogan* went into possession of two parcels of land described as N. E. fractional quarter of section No. 5, in township No. 8, of range 15 east, in the county of Jefferson, and the N. E. quarter of section No. 32, of township No. 9, in range No. 15, in the county of Dodge, in Wisconsin, being wild lands of the United States, and remained in peaceable possession thereof until the land sale ; that he went to the land sale to purchase said tracts, but finding himself short of the necessary funds, and hearing of the proposals of *Walker*, he applied to *Walker* for a loan of money for that purpose, and *Walker* agreed to make the loan on the terms before set forth ; that, in pursuance of this agreement, *Rogan* did, on the 18th of February, 1839, execute and deliver to said *Walker* his bond bearing date on that day, in the penalty of $1,659.14, to be paid to said *Walker* and *Ellis Baker*, their executors or assigns, and conditioned for the payment to them of the sum of $829.58 on the 18th of February, 1843, and annually the sum of $29.04 as interest, and for the payment of all taxes, etc.

The bill further states, that in pursuance of said agreement, *Walker*, on the 23d of February, 1839, purchased of the United States the aforesaid tracts *for the said Rogan*, and that the payment of the purchase money to the United States was made by the said *Walker*, *on account of said Rogan, and was the true and only consideration for the bond of said Rogan to Walker and Baker*, and that on the 27th of February, 1839, *Walker* delivered to *Rogan* a deed of the said lands, of the tenor and purport aforesaid, and duly acknowledged.

And the bill charges that *James Rogan* thereby became seized in fee simple absolute of the said tracts, subject to the right of *Walker* and *Baker*, as incumbrancers thereon, to the payment of all sums due or to become due on said bond. It further states that *James Rogan* had paid a part of the

interest, but none of the principal of said bond, and that he continued in possession of the N. E. fractional quarter of section 5, town 8, range 15, until the 20th of January, 1842, when he and his wife conveyed all their title and interest therein to one John Masterson by warranty deed, and that on the 30th of July, 1844, said Masterson and wife, by a like deed, conveyed the same to the complainant. And the bill prays that an account may be taken of the amount due on the bond, and that the complainant may be allowed to pay the whole or such part thereof as to the court shall seem proper, and redeem the premises.

In view of the facts set out in the bill, there can be no question as to the equitable relation between the parties. *Walker*, for himself and *Baker*, agreed to loan *James Rogan* a sum of money, and to enter the land for him, and took his bond for the sum loaned, and such interest or commission, as was agreed on between them, and then entered the land, on account of *Rogan*, in pursuance of the agreement, taking the title in himself. The qualified deed afterwards given to *Rogan* must be regarded as a part of the same transaction, in fulfilment of the agreement, and the whole together constitutes *Walker & Baker*, at most, but incumbrancers upon the estate for the amount secured by the bond. They have an undoubted equitable interest or lien, either for the whole sum or for the amount actually advanced, with lawful interest. And *James Rogan* and his grantees have the whole estate and are the real owners subject to the extinguishment of this lien. It is immaterial whether the deed is forfeited or not, since its forfeiture would only throw back the title into the hands of *Walker* for the purposes originally intended. As the facts are now presented, it is impossible to separate the parts of the transaction. This is not the case of a naked conditional deed, and none of the authorities cited by the learned counsel for the respondents are at all applicable.

The circuit court was right in overruling the demurrer to

the complainant's bill. But as the case may again be presented to this court upon the pleadings and proofs, and under a different showing of facts, I forbear to enter into a discussion of the principles here announced, or to cite the authorities sustaining them.

Order affirmed, with costs.